The last case on for argument is United States v. Burdick. The final case on the calendar I will note is Gaffney v. Perlmutter, and that's on submission. Good morning, may it please the Court. I'm Martin Vogelboom. I'm here for Carl Burdick. We're here on Mr. Burdick's case because he is currently serving a 240-month prison sentence, which is about six years in excess of the top end of a guideline range that was miscalculated, but that the District Court repeatedly indicated it would be inclined to impose as its sentence were the United States Attorney's Office to redraft a plea agreement binding the Court and the parties to that range, in other words, an 11C1C agreement. In this case, the District Court, over the course of five status conferences, made it very clear that it would like to see the case resolved by agreement and that it would be the strongest word it used was probably and not certainly to accept a sentence of 168 months if the United States Attorney's Office would be agreeable to revising Mr. Burdick's original plea agreement in light of certain miscalculations that were made in the guidelines range and give some assurances that the victim and her family, this was an interstate transportation of a minor case, for sexual purposes would be amenable to such an agreement and that the United States Attorney's Office believed it was appropriate. It's our contention that this repeated emphasis on the willingness to accept a 168-month sentence and then the later imposition of a 240-month sentence following two revisions of the guidelines range by United States probation really reflects the District Court according an impermissible presumption of reasonableness to the guidelines at the end of the day. There was a revised PSR that ended up recommending 235 to 293 and that would seem to be a substantial influence and maybe more of an that the guidelines find. There were obviously the court is correct and in fact there were two revised PSRs and the court has just pointed to the last of them and that's where we do end up is that 235 to 293 but this court has remarked and so have some District Courts that the analysis of whether to accept an 11C1C plea, whether an agreed upon sentence is an appropriate sentence is essentially the same as doing the analysis under 3553A because ultimately that is the master sort of sentencing directive to the District Courts and while I understand Your Honor's point, when you have a District Court saying over and over again as the District Court did here, if you come to me with an agreement 268 months and you tell me that the victim's family is okay with that and the victim is okay with that, the United States Attorney's Office is okay with that and you put your official stamp of approval on it, I can't tell you for sure but I would be inclined to accept such an agreement. You know, I think that might be an appropriate sentence and when you have a prosecutor, I have to say commendably, the prosecutor did here repeatedly over the course of five hearings saying I've spoken with the victim's family and I've spoken with the victim personally, not only are they okay with this 168 month sentence, I can't get my office to sign off on it because we refuse to sign off on a sentence that effectively reflects an inaccurate guideline range but I can tell you that it would be okay with the victim and her family, I can tell you that it would spare us an appeal, I can tell you that Mr. Burdick is about 50 years old and if you get such a sentence, there's not going to be much of a concern for public safety from our point of view when he's released, all of which of course echo 3553A, those are all legitimate 3553A considerations and then you have the district court saying, well, let me tell you what the problem is, unless you do this as an 11C1C, I have to come up with some good reason to depart or vary from the guidelines, that and meanwhile, the district court knows all of this alien information that it really speaks about its sentencing, the fact that there was a prior similar incident, the fact that there was this 4B1.5 enhancement for a pattern of sexual misconduct was likely to apply, the whole time the district court knows this and really the only factor that... For how long a period of time, a couple of months? Yeah, I'm sorry I can't tell you the exact period of time but yes, it's a few months, I mean in this case, it came in on a complaint and I think it was due to be resolved almost immediately upon the filing of that complaint so it was essentially a sentencing case from the beginning but the district court didn't learn any new information other than the change in the guidelines range. So it knew about the prior? It knew about the prior at least after the first revised PSR that came out because that information was included there, it also knew about the pattern of sexual misconduct because that was in the second revised PSR and then we get to the sentencing hearing and those are the very factors that it relies on for saying that your defense counsel, your request for a guideline sentence at the low end of the original guidelines range, the inaccurate one is inappropriate and I think 240 months which is sort of just above the bottom end of the final revised guidelines range is the right sentence, really reflects a sense that if I'm going to deviate from the guidelines here, there's got to be something like really extraordinary and while of course deviations or non-guideline sentences do require some measure of justification and conceivably if the district court had imposed a 135-month sentence, we might be here on a government appeal arguing about whether the justification was adequate, in and of itself, that is simply according, that's a step down the line. At this point, we're just talking about according to the guidelines, too much weight. Also, the district court imposed two conditions of supervised release, a verification testing provision similar to a polygraph condition but involving computer voice stress analysis that is not supported by the justifications that led this court to approve. Do you object to the notion of postponing a ruling on, assuming everything else does not go your way, I mean just leaving that alone, I gather the government has asked that this be postponed on the theory, I shouldn't put it this way, on the theory that electronic means of invasion of privacy are going to improve between now and then and therefore it's going to be a, yeah. That's a helpful question because I think it covers both of the ESR conditions. I don't think that that rationale bears any weight in this case. Here, we're not talking about the sort of thing where the complaint is that there is no technological means available that will adequately respect my privacy. Here, we're talking about the language of the condition itself and whether it meets with the justifications in Johnson as to the voice stress analysis. You should decide that now. It's a matter of vagueness and it's a matter of delegation and especially with regard to the... To be sure that I'm, not your fault, my fault, to be sure we're talking now about computer monitoring and verification testing. I think we're talking, I think the government made that suggestion as to both of the, yeah, and I think the same and I think it has to be rejected in both, yeah, in both cases because we're not really complaining. So, there are aspects of this that are not complaints about the technology but are just complaints about the language. For example, that under the verification, the voice stress, probation also gets to choose other similar measures for verification which are completely unidentified. Why would it be to your disadvantage for us to hear that argument sometime after now but before it goes into effect? Because these are, our district court has come up with a set of revised special conditions of supervised release. So, both of these conditions and their language are appearing in numerous, numerous cases that we see every day. So, it's not just merely a matter of Mr. Burdick who's not going to see the street for 20 years or maybe a little bit sooner and nothing's going to change in 20 years with regard to questions of what, you know, suspicious or impermissible activity means. Thank you. May it please the court, Monica Richards here on behalf of the United States. With regard to the plea agreement that was entered here, the district court confirmed twice during the plea colloquy itself that Mr. Burdick understood that when he pled guilty, his sentencing exposure was for a term of up to life imprisonment. That's the statutory maximum. It's in the record at pages A44 and A46. And then again throughout the status conferences, as were mentioned, there were five. The district court reviewed the statutory maximum term of life with Mr. Burdick. In the record specifically, I can point to records at A84 and A112. In light of those, the undisputed fact that Mr. Burdick was advised and knew and entered into this agreement with that, knowing that that was a possibility, the claim here that his plea was not entered in, and there is no claim here that the plea wasn't entered into knowingly or voluntarily. The party's mistake regarding the initial applicable sentencing guidelines range can't provide a basis and does not provide a basis for this court to disturb the sentence here. At the time of the plea, the district court made sure Mr. Burdick knew that it was up to the district court to decide whether to give a within guidelines sentence, acknowledging that it could give a sentence that was higher or lower than the guidelines range. He did that during the plea colloquy itself, and I refer the court to record page A45. Then again, through the status conferences, the district court recognized that it could depart. It said it opined twice. I see no basis for departure, and again, I refer the court to the record at A95 to 96 and A104. Those were two separate statuses. Is it inconsistent then that Judge Siragusa was saying, in substance, I want you to go get an 11C1C plea deal for the 168 months, knowing everything that he knew, or maybe you dispute that he knew all of the factors that were available for him to consider, that he could go along with 168, but then instead imposes a guideline sentence without reconciling what seems to me, at least on its face, is an inconsistency in his positions? I think that's exactly what the court here is grappling with, is what my office grappled with and what Judge Siragusa grappled with. Here we have a problem. We made a mistake. It was an across-the-board mistake. The government made a mistake, and the defense made a mistake when they first started and talked about these plea negotiations. So now what do we do? So it was just an attempt to try to figure out now what can we do here. When the government went back to the office and said the court proposed an 11C1C, actually, there were a couple of things that happened first. I mean, just to be clear, there was a sequence of efforts here, and the 11C1C did come up eventually, but there were other things that we tried first. I'm using that sort of as shorthand. Okay. So with regard to that then, when that came up as the 11C1C possibility, the government went back. They said, what about an 11C1C? Well, now we face the same problem that the district court faced, which is that the guidelines range called for a higher number, called for 235 to 293, and there was no working around that. That was what the guidelines range was. So the government doesn't pick an 11C1C number out of the air. It has to be based on the guidelines range. And then we're bound by that with regard to the next case and the next case that comes along. So to do that in this case would have put us in a very difficult position with regard to other cases when the fact was it was a mistake that was made. Now what do we do? Well, here's what the government said. Now we're stuck with that agreement. We're bound by that agreement. If it had been a lower range, then of course we could have gone back to the table and we could have figured something out to come up with a number that represented the actual if the guidelines range was in fact lower and the mistake was to his detriment in that regard, then we could have done that. But when the guidelines range was higher, we were bound by Lawler. So here he was in his best position. Right. So Ms. Richards, I'm not suggesting that the government did anything inappropriate here. What I'm wrestling with is why the district court had in mind all of the factors that would have, it seems to me, he would have considered and imposed a 168-month sentence. And when the final sentencing proceeding comes down out of the wash, all of those factors justify or are not reconciled. His prior implicit approval is not reconciled in any way on the record. Well, that's what I disagree with, Your Honor. And maybe that's my insight. I didn't understand the question. But the court twice said, the court was wrestling with this. This wasn't a firm commitment to a given appropriate resolution here. The court said, I see no basis for departure based on what I know now, what I see before me. And that's the record at A95 to 96. I'm telling everyone, honestly, I don't see, not that I couldn't be. So my point is, prior to that, I knew all of this stuff and I was OK with that. I'm sorry. 168 months worked for me when I knew all of these things beforehand, implicitly. Or do I have that wrong? Well, this is during one of the status conferences. So I guess the moment, I couldn't tell the court. I'm sorry. I don't, I tried to look when I heard the question, but I don't know the moment that the district court found out that this factors. Yeah, I don't know that in terms of the specific timeline. I do know that by the time the sentencing, I'm sorry, by the time these status conferences took place, and certainly the one, as I've referenced, that took place on November 21st of 2017, that was before the court. So he really, it wasn't a firm, I disagree in the sense that it was not a firm commitment to that 168 number. The court specifically said, I don't see a basis for the departure, whether within the guidelines or below guidelines. Well, no, he says that, Your Honor, that's what I'm trying to say. During the status conferences twice, once during one and again during another, on page 104. So on November 21st and then again on December 5th at the status conferences, the district court says, I see no basis for departure. So, and maybe, and he actually, and I don't mean to limit it to departure, he says under the guidelines or non-guidelines. He's looking at it from both points of view. So that when we get to the point of sentencing, yes, now we've got the sentencing here. We've got a well-intended effort to work out what the options were given the initial mistake. Conflict re-counsel was brought in, appeared for two conferences with the defendant, met with the defendant multiple times, as I understand from the record here, and made the determination not to file a motion to withdraw the plea and made the determination to with the public defender's office. So at that point, now we're at sentencing, what do we do? Is the sentence here reasonable? Yes, absolutely. The sentence was a within-guidelines sentence and the district court went to great lengths to explain its reasons for the sentence, justifying it based on the history and characteristics of the defendant, the very serious nature of the offenses here, of the offense here, which involved multiple road trips, two road trips with the same defendant, I'm sorry, with the same victim. And in addition to other matters which went uncharged given the filing of the information here, there was a complaint initially that also included child pornography charges. So here, by the time of sentencing, with the full picture in mind, the sentence here was both procedurally and substantively reasonable. With regard to the monitoring questions, I'm a little stuck, frankly, on the computer monitoring. During the sentencing hearing here, the public defender's office said, please defer this until final. Please defer this until twenty years from now when our client's been released. And also then with regard to the verification testing, again, that was something that's been worked out with the public defender's office in Buffalo. The district court noted it on the record. This is a condition that was imposed based on conversations with your office. So now here in front of this court, the same office is challenging it. I am, I frankly think the district court here, I'm sorry, that this court does not need to decide it now, the verification testing provision. But if it does, I think that the PD's office is bound by what it agreed to with the district court. Unless there's any further questions. Judicial admission, if you will, if you were around for the earlier arguments. I'm going to stand down now. Thank you. Might be helpful for general motives. I was actually in the anteroom for that. Thank you. Thank you, Ms. Richards. Mr. Volgenbaum, you've reserved two minutes. The question here is really, with regard to the sentence itself, there are two questions. One, what is the difference between, I think this would be an appropriate 11C1C sentence based on everything I know, which is exactly what I'm going to know several weeks from now. That's question number one. Because, I mean, I don't think there's any different standard for crafting a sentence, whether you're going to do it by agreement, accept it by agreement, or do it as it was done here, as just by imposition. And two, do you miss the weeks of mature reflection? Well, I think that Ms. Richards' point actually kind of disproves that. I mean, you've got two weeks earlier, Judge Seragus is saying, I don't see a reason to depart or vary. What's the difference between the acceptance of an 11C1C plea and doing, if you have the information, which you did, and, you know, doing it, perhaps it's not a departure, maybe there's not a ground for departure within the guidelines, but doing a variance. If you think the sentence meets the statutory factors, it either meets it or it doesn't meet it. There's no new information here. And, you know, I think we get into some really sticky territory if what we're going to say is that we're going to be, you know, so deferential procedurally and substantively that a swing of six years at the bottom end and 10 years, you know, based on what defense counsels ultimately request for sentences, well, that's all within the sort of capacious range of, you know, what a substantively reasonable sentence might be here, without looking at whether or not the process by which it was arrived at really examined the particular defendant. With regard to the verification condition, there's been no institutional commitment in my office. I think there's one case that the particular attorney in this case, I think, recommended or agreed to this condition, and I've acknowledged that we're probably looking at, you know, plain error or soft plain error on that condition, precisely because, you know, the objection that I'm making here wasn't really articulated in it. And with regard to the other aspect of delaying things, again, it's a matter of language. It's not a matter of technology. I have no idea what impermissible and suspicious activity means such that the search condition of the computer monitoring program is triggered. I mean, it could mean, and this Court could construe it to mean impermissible under the terms of condition of supervised release or prohibited by law, but that is basically duplicative of supervised release and the condition that the defendant remained of good behavior anyway. Clearly, it has to mean something more than that for it to be substantive, but it's completely opaque to us. We have no idea what it means. And the same thing is true with privileged or private material that is supposed to be, you know, not looked at or efforts are supposed to be made not look at during these searches. I don't know standing here before you today, and I don't know that anybody could tell you what the third-party vendor, which is my understanding how probation does this, thinks private means, you know, that they can't look at when conducting a search that's been triggered by this other vague standard of impermissible or suspicious activity. And nor do I know what another verification testing device that isn't even identified in the condition is that this sentence grants probation the discretion to use regardless of what it is or its apparent reliability or any of the factors this Court considered in Johnson. Well, I've got you both here. This is not the first time, certainly, that I've heard these after-the-fact conditions or the conditions that will come into play after the fact. It would be helpful, I will presume to speak only for myself, but to me for future cases, which I'm sure are trundling down the pike toward us, if perhaps, because I know you all, because sometimes you meet with us on an official basis, could figure out maybe a protocol among the six districts that are within this circuit for how these things might be evolved, because, oh, I know, don't look at me that way. Don't look at me that way. I've got you. No, but I mean, if you could take that message back, I think we see these on a somewhat regular occasion, and it raises some issues, particularly with the arguments made that who knows what the future technology will bring to us, and Lord knows we can't predict that necessarily. It may be that by then it's going to be a reproduced electronic version of the defendant. It gets more and more complicated. That's how you'll get your decisions from us as well. Anyway, thank you both. Appreciate the helpful arguments, and the last case, as I said, is on submission, so we'll ask the clerk, please, to adjourn court.